**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| REUBEN DRAKE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 1:19-cv-02134-CCB |
| SYNCHRONY BANK, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION MOTION AND MEMORANDUM AGAINST DEFENDANT'S MOTION TO DISMISS**

Defendant Synchrony Bank ("Synchrony"), through undersigned counsel, makes its Reply to Plaintiff Reuben Drake's Opposition [ECF no. 12, the "Opposition"] to Synchrony's Motion to Dismiss [ECF nos. 9-11].

**I.   INTRODUCTION.**

Drake's Complaint contains three claims, violation of the TCPA, violation of the MTCPA and a claim for common-law invasion of privacy. In its Motion to Dismiss and Memorandum, adopted fully herein by reference, Synchrony clearly articulated multiple reasons Drake's claims should be dismissed, and Drake's Opposition fails to refute any of them.

Simply put, Drake has not and cannot plausibly allege that Synchrony contacted his cell number by way of a telephone system that meets the statutory definition of an ATDS. Because such a plausible allegation is a *sine qua non* of a TCPA claim, Drake's TCPA claim must be dismissed.

As to Drake's state-law claims, he concedes that the requirements for establishing a legally sufficient MTCPA claim are the same as those for establishing a legally sufficient TCPA claim; thus, since his TCPA claim is fatally insufficient, so too is his MTCPA claim.

Finally, after Drake's TCPA claim is dismissed, this Court can and should exercise its discretion to decline to exercise supplemental jurisdiction over any remaining claims, all of which would be based solely upon state law.

## II.  ARGUMENT.

### A.  Drake's failure to substantively address Synchrony's arguments.

Initially, Synchrony submits that, in every instance where Drake has failed to respond to an argument set out in its motion, the Court should determine that he has conceded the point at issue and/or abandoned his underlying claim in regard thereto.  "Judges in this district have held that, by failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim."  *Muhammad v. Maryland*, No. CIV.A. ELH-11-3761, 2012 WL 987309, at *n. 3 (D. Md. Mar. 20, 2012) (citations omitted).  *See also Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) ("By her failure to respond to [defendant's] argument in a motion to dismiss, the plaintiff abandons her claim."); *Stewart Title Guar. Co. v. Sanford Title Servs., LLC*, 2012 WL 5547997, at *3 (D. Md. Nov. 10, 2011) ("The failure to respond to [a] Motion [to dismiss] is tantamount to a waiver of any opposition on the merits.").

### B.  Drake's TCPA arguments have been considered and rejected in this circuit.

In response to Synchrony's motion as it pertains to his TCPA claim, Drake suggests that his conclusory allegation that Synchrony used an ATDS is sufficient to defeat Synchrony's motion ("the definition of [an] ATDS is premature at this stage in the pleadings."  Opposition, p. 2).  Drake also contends that, even if the issue of whether his allegation is sufficiently plausible

is germane in this context (which it plainly is), the Ninth Circuit's decision in *Marks v. Crunch*[1] mandates that this Court conclude that Synchrony used such a system. Drake is incorrect on both points.

In its motion, Synchrony cited to authority including *Snow v. Gen. Elec. Co.*, No. 5:18-CV-511-FL, 2019 WL 2500407 (E.D.N.C. June 14, 2019). *Snow*, a case decided by a trial court in the Fourth Circuit, is on all fours with the case at bar and, in its decision, the *Snow* court considered, addressed, and repudiated both of Drake's arguments. Further, the *Snow* court expressly rejected the *Marks* court's approach of reading additional requirements into the statutory definition of an ATDS.

1. **The definition of an ATDS is relevant to the instant analysis.**

Drake's initial argument is that any consideration of "the definition of [an] ATDS is premature at this stage in the pleadings." Opposition, p. 2. This argument is plainly incorrect in that the Supreme Court has decided otherwise, as Synchrony pointed out in its motion and as the *Snow* court reiterated:

> "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

*Snow*, 2019 WL 2500407, at *9. Despite his protestations to the contrary, Drake must plausibly allege that Synchrony used an ATDS, and consideration of that issue necessarily involves a comparison of Drake's allegations to the statutory definition.

---

[1] *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018), *cert. dismissed,* 139 S. Ct. 1289, 203 L. Ed. 2d 300 (2019).

### 2. Drake's conclusory allegations are insufficient to support a TCPA claim.

The facts in *Snow* are remarkably similar to those alleged here. In *Snow*, as in the matter at bar, the plaintiff alleged she purchased a new cell phone and soon began receiving messages "that were clearly intended for another recipient."[2] *Snow*, 2019 WL 2500407, at *4. She brought a TCPA action wherein she "assert[d] in conclusory terms…that defendants 'utilized one or more of the forms of hardware, software, or equipment that the FCC characterizes as an automatic telephone dialing system[' and] that defendants communicated to plaintiff 'by an automated means that did not require human intervention.'" *Snow*, 2019 WL 2500407, at *11–12. These allegations are virtually identical to Drake's and, as here, drew a Rule 12(b)(6) motion from the opposing parties.

After a thorough analysis of the plaintiff's arguments, the *Snow* court granted the defendants' motion; in doing so, it addressed and decided many of the key issues raised here.

#### a. Drake's allegations are wholly inconsistent with the definition of an ATDS.

When considering the plaintiff's allegations versus the definition of an ATDS, the *Snow* court held that, as here, the allegations were entirely inconsistent with the definition of an ATDS because the calls were specifically intended to reach the plaintiff's cell number:

> Critically missing from the complaint are any facts permitting an inference that the text messages plaintiff received were sent using equipment that stores or produces numbers to be called "using a <u>random</u> or <u>sequential number</u> generator." *47 U.S.C. § 227(a)(1)* (emphasis added). Indeed, the facts alleged suggest the opposite. Plaintiff alleges that the text messages did not reach her randomly, but rather reached her because she was assigned a telephone number previously assigned to an individual who received technical alerts as a part of a job function.

---

[2]Plaintiff contended that "she was assigned a telephone number previously assigned to an individual who received technical alerts as a part of a job function." *Snow*, 2019 WL 2500407, at *11.

*Snow*, 2019 WL 2500407, at *11.  Because Drake's allegations are identical to those in *Snow*,[3] the same reasoning applies and the same conclusion should follow; Drake's TCPA claim should be dismissed.

      **b.**      **The definition of an ATDS is set by the TCPA.**

Drake next suggests that this Court should use an alternate definition of an ATDS when evaluating his allegations; amongst his arguments are that "[p]rior FCC Declaratory rulings are still binding" and that the Ninth Circuit's holding in *Marks v. Crunch San Diego, LLC* establishes that the definition "includes devices with the capacity to dial stored numbers automatically." Opposition, p. 2.  However, the *Snow* court rejected these exact arguments.  It considered and rejected arguments that FCC Orders (recent or otherwise) should be considered in regard to the definition of an ATDS, including both the 2015 FCC Order[4] and the 2003 Order.[5]  It also rejected an invitation to interpret the TCPA so as to broaden the statutory definition (as the *Marks* court did):

---

[3]For example, Drake alleges "One evening Plaintiffs [sic] sister-in-law Erien Frazier answered one of the calls from Synchrony Bank in which she had to say hello several times before she heard a click, which was followed by a live agent asking to speak to someone named Amanda Socks who isn't the current cellphone subscriber.  Erien Frazier informed the caller that she didn't know anyone by the [name (sic)] of name Amanda Socks." *See* ECF no. 1, ¶¶ 13-15.

[4]"Although the Fourth Circuit has not addressed the impact of *ACA International* on prior FCC interpretations of the definition of ATDS, other circuits uniformly have held that *ACA International* set aside the FCC's interpretations of the definition of an ATDS, and that the court must return to interpreting the statutory definition of ATDS without that FCC guidance." *Snow*, 2019 WL 2500407, at *15.

[5]"Plaintiff suggests that *ACA International* does not alter a prior 2003 FCC interpretation of the ATDS definition under which it concluded that an ATDS need only have "the capacity to dial numbers without human intervention."  The D.C. Circuit, however, expressly drew a connection between the FCC's 2003 interpretation of ATDS and the FCC's 2015 interpretation." *Snow*, 2019 WL 2500407, at *15–16.

> Plaintiff also suggests that, even without FCC guidance, this court should interpret the definition of ATDS to encompass any equipment that has the capacity to store and dial numbers from a preprogrammed list, even without the capacity to store or produce numbers to be called "using a random or sequential number generator." 47 U.S.C. § 227(a)(1)  Plaintiff urges the court to follow the Ninth Circuit's interpretation in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1050 (9th Cir. 2018). There, the court determined that the TCPA was "ambiguous on its face," and held that "the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically." *Id*. at 1052.
>
> A significant number of courts have rejected the reasoning of *Marks*, however, and the Third Circuit adopted a contrary approach in *Dominguez on Behalf of Himself v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018), in requiring that a calling system "function[] as an autodialer by randomly or sequentially generating telephone numbers, and dialing those numbers." *Id.; see, e.g., Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 626 (N.D. Iowa 2019) ("[T]his Court finds the Marks court's decision erroneous as a matter of statutory construction."); *Johnson v. Yahoo!, Inc.*, 346 F. Supp. 3d 1159, 1162 (N.D. Ill. 2018) (rejecting *Marks*, and holding the statute is "not ambiguous"); *Roark v. Credit One Bank, N.A.*, No. CV 16-173 (PAM/ECW), 2018 U.S. Dist. LEXIS 193252, 2018 WL 5921652, at *3 (D. Minn. Nov. 13, 2018) (rejecting *Marks* and requiring a "present capability to generate random or sequential numbers to dial" to qualify as an ATDS).
>
> Although the Fourth Circuit and courts within this circuit have not addressed the split between these courts and *Marks*, the court finds the *Dominguez* approach better comports with the plain language of the statute. **The statute unambiguously incorporates a "random or sequential number generator" into the definition of an ATDS.** 47 U.S.C. § 227(a)(1). **Thus, plaintiff must allege facts permitting an inference that defendants called her with equipment that has the capacity to store or produce numbers using a random or sequential number generator.**

*Snow*, 2019 WL 2500407, at *16–18 (emphasis added).

In short, the *Snow* court expressly considered and rejected each of Drake's argument. In light of that court's well-reasoned decision and the plain statutory text of the TCPA, Drake's arguments fail and his TCPA claim must be dismissed.

### C. Drake's MTCPA claim should be dismissed.

Drake concedes that "an analysis of the [MTCPA] claim's sufficiency follows a path identical to that concerning the TCPA claim's sufficiency."  Opposition, p. 3  Thus, because Synchrony has conclusively established that Drake's TCPA claim must be dismissed, it follows that his MTCPA claims must also be dismissed for the same reasons.

### D. This Court should decline to exercise supplemental jurisdiction over the remaining state-law claims.

In addressing the issue of supplemental jurisdiction, Drake seems to misapprehend Synchrony's arguments about whether this Court should exercise supplemental jurisdiction over the MTCPA claim (and common-law invasion of privacy claim).  Synchrony does not suggest that this Court cannot exercise supplemental jurisdiction over Drake's state-law claims if a legally sufficient TCPA claim remains; rather, it is Synchrony's position that if the TCPA claim is dismissed, this Court should decline to exercise supplemental jurisdiction over any remaining state-law claims.  Drake has not spoken to this issue, particularly as it applies to his common-law invasion of privacy claim, and so the issue should be treated as conceded in Synchrony's favor.

### E. Any proposed amendment to the Complaint would be futile.

At the end of his Opposition, Drake requests conditional leave to amend his Complaint to "cure any defects."  Opposition, p. 4.  It is Synchrony's position, however, that any attempt to amend the Complaint would be futile, which is a valid reason to refuse leave to amend.  *Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 446 (4th Cir. 2001).  An amended complaint is futile if it "fails to satisfy the requirements of the federal rules."  *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (internal quotation marks omitted).  Thus, if an amended complaint would not survive a motion to dismiss for

failure to state a claim upon which relief can be granted, the amendment is futile and should be denied. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

Here, Drake has attached an Affidavit to his Opposition; while it should not be considered by when ruling upon Synchrony's motion[6] because it is neither part of nor integral to the Complaint, it is illustrative of the additional information that Drake may seek to include in an amended filing.

Reading the Affidavit reveals that it does not speak at all to the fundamental issues raised in Synchrony's motion. Moreover, between this action and *Frazier v. Synchrony Bank*, this Affidavit is the fourth[7] such document Drake and Frazier have submitted concerning Synchrony's calls; none of them address, much less cure, the intrinsic defects in Drake's claims.

## III.   CONCLUSION.

For all of the foregoing reasons, Defendant Synchrony Bank respectfully submits that the instant Complaint should be dismissed. Moreover, because an amendment to the Complaint would not remedy the instant issues, Synchrony respectfully requests that no leave to amend be granted.

---

[6] A court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted). To be "integral," a document must be one "that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted).

[7] Particularly:

- *Frazier v. Synchrony*, 1:19-cv-00473-CCB, ECF 14-1, Affidavit of Erien Frazier.
- *Frazier v. Synchrony*, 1:19-cv-00473-CCB, ECF 14-2, Affidavit of Reuben Drake.
- *Drake v. Synchrony*, 1:19-cv-02134-CCB; ECF 1-2, Affidavit of Erien Frazier.

- 9 -

DATED:  October 8, 2019	Respectfully submitted,

/s/*John L. Kazmierczak*
John L. Kazmierczak (Bar No. 24564)
Reed Smith LLP
20 Stanwix Street, Suite 1200
Pittsburgh, PA 15222
412-288-3131 (telephone)
412-288-3063 (facsimile)
jkazmierczak@reedsmith.com
*Attorneys for Defendant Synchrony Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2019, a copy of the foregoing Memorandum in Support of Defendant's Motion to Dismiss was filed electronically, using the ECF system, which will send notification of such filing to all parties of record.  Plaintiff, who is proceeding *pro se*, has executed and filed a Consent by Self-Represented Litigant to Receive Notices of Electronic Filing (ECF no. 3).

/s/ *John L. Kazmierczak*
John L. Kazmierczak