## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

REUBEN DRAKE,                          *

          Plaintiff,            *

      v.                         *          Civil Action No. 1:19-cv-02134-CCB

SYNCHRONY BANK,                        *

          Defendant.          *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

      Defendant Synchrony Bank ("Synchrony"), through undersigned counsel, makes its Response in Opposition to Reuben Drake's ("Drake") Motion for Leave to File First Amended Complaint (ECF no. 16, the "Motion").

## I.      INTRODUCTION, BACKGROUND, AND PROCEDURAL HISTORY.

      On July 19, 2019, Drake filed a Complaint though which he alleged that Synchrony violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), the Maryland Telephone Consumer Protection Act, Md. Code Ann., Com. Law § 14-3201, *et seq.* ("MTCPA"), and committed the Maryland common-law tort of invasion of privacy.[1]  Drake's claims stem from a series of calls that Synchrony allegedly made to his cell number in an attempt to reach a stranger to him, 'Amanda Socks,' about Ms. Socks' Synchrony account.  *See* ECF no. 1, ¶¶ 13-15.

---

[1]This is the second occasion upon which these claims have been brought before this Court; these claims had previously been asserted by a non-attorney, Erien Frazier, pursuant to a purported assignment of rights.  *See Frazier v. Synchrony Bank*, Civil No. 1:19-cv-00473-CCB.  On July 9, 2019, this Court granted Synchrony's Motion to Dismiss in *Frazier v. Synchrony Bank*.  *Id.*, ECF no. 18.

In response, Synchrony filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF no. 10), though which it advanced three arguments: 1) Drake's TCPA and MTCPA claims should be dismissed because Drake has not and cannot plausibly allege that Synchrony used an Automatic Telephone Dialing System ("ATDS") as defined by the TCPA; 2) because Drake's sole basis for invoking federal jurisdiction is that his TCPA claim involves a federal question, once the TCPA claim is dismissed, this Court should decline to exercise supplemental jurisdiction over his state-law claims and dismiss those as well; and 3) Drake's MTCPA claim should be dismissed because it represents an impermissible attempt to obtain a double-recovery for the same alleged actions by Synchrony.  Synchrony adopts its Motion to Dismiss (ECF no. 10) and Reply (ECF no. 13) herein by reference as if fully restated.

Drake, through his opposition to that Motion (ECF no. 12), contended 1) that "the definition of [an] ATDS is premature at this stage in the pleadings" (ECF no. 12, p. 2) and 2) that the Ninth Circuit's decision in *Marks v. Crunch* mandates that this Court conclude that Synchrony used an ATDS. *Id.*, *generally*.

Through its Reply (ECF no. 13); Synchrony showed that the definition of an ATDS is properly at issue and illustrated that the *Marks* decision is an outlier in that its definition of an ATDS has been rejected by numerous courts, including the Third Circuit Court of Appeals and the United States District Courts for the Districts of Iowa, Illinois, and Minnesota (in addition to the District of North Carolina in *Snow*).[2]

---

[2]While this matter was stayed, the Eleventh Circuit Court of Appeals thoroughly analyzed the definition of an ATDS and joined these courts in rejecting the *Marks* definition.  *Glasser v. Hilton Grand Vacations Co., LLC*, 2020 U.S. App. LEXIS 2481, 28 Fla. L. Weekly Fed. C 770. In coming to its conclusion, the *Glasser* court noted that it is "not alone in adopting this interpretation  [because s]everal other courts agree." *Id*. at *16. (*citing Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018); *DeNova v. Ocwen Loan Servicing*, No. 8:17-cv-2204-T-

Continued on following page

On or about the same time that this Court issued its Order staying this action pending resolution of the *Snow* appeal (ECF no. 14), Plaintiff filed his Motion.  (ECF no. 16)  Plaintiff seeks to add additional facts in support of his existing claims and to add a new claim for violation of the Maryland Consumer Protection Act (Md. Code, Comm. Law. Art, § 13-101, *et seq*.) (based upon the facts Plaintiff has alleged and proposed to allege)[3].  Synchrony now makes its Opposition to Plaintiff's Motion for Leave to Amend.

## II.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 15(a), leave to amend a complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  "Indeed, we have recognized that leave to amend a complaint should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  *Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 446 (4th Cir. 2001).

An amended complaint is futile if it "fails to satisfy the requirements of the federal rules." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (internal quotation marks omitted).  Thus, if an amended complaint would not survive a motion to dismiss

---

Continued from previous page

23AAS, 2019 U.S. Dist. LEXIS 163014, 2019 WL 4635552 at *3-4 (M.D. Fla. Sept. 24, 2019); *Adams v. Safe Home Sec. Inc.*, No. 3:18-cv-03098-M, 2019 U.S. Dist. LEXIS 126522, 2019 WL 3428776 at *3-4 (N.D. Tex. July 30, 2019); *Gadelhak v. AT&T Servs., Inc.*, No. 17-CV-01559, 2019 WL 1429346, at *5–6 (N.D. Ill. Mar. 29, 2019), *aff'd,* No. 19-1738, 2020 WL 808270 (7th Cir. Feb. 19, 2020); *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 962–63 (E.D. Mich. 2018), *dismissed,* No. 18-1989, 2018 WL 6242281 (6th Cir. Oct. 24, 2018)).

[3]In the First Amended Complaint's ("FAC") preamble, Drake states he is bringing a claim for violation of the Maryland Consumer Debt Collection Act, but there is no further mention of that statute in the Complaint; accordingly, Synchrony is proceeding on the assumption this is a typographical error.  If it is not, Synchrony reserves the right to make further response in regard to that claim.

for failure to state a claim upon which relief can be granted, the amendment is futile and should be denied. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

"The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Fed. R. Civ. P. 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (*quoting Bell Atlantic Corp.*, 550 U.S. at 570). While "notice pleading requires generosity in interpreting a plaintiff's complaint . . . generosity is not fantasy." *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 191 (4th Cir. 1998). In considering a motion to dismiss, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments" nor "the legal conclusions drawn from the facts." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## III.   ARGUMENT

### A. Amendment of the Complaint would be futile as to Drake's TCPA and MTCPA claims.

#### 1. Drake has not and cannot plausibly allege that Synchrony used an ATDS.

Synchrony has adopted its Motion to Dismiss (ECF no. 10) and Reply (ECF no. 13) fully herein by reference.  However, by way of brief summary, Synchrony contends that because use of an ATDS is a threshold element of any TCPA claim (*see* 47 U.S.C. § 227(b)(1)(A)(iii) (requiring consent for calls placed to a cell phone only when the calls are made using an ATDS or artificial or prerecorded voice)), Drake must plausibly allege that calls were made "**using [an] automatic telephone dialing system**," without consent.   47 U.S.C. § 227(b)(1) (emphasis added).

Importantly, the TCPA specifically defines an ATDS as equipment with "the capacity to (A) to store or produce telephone numbers to be called, **using a random or sequential number generator**; and (B) to dial such numbers.'"   47 U.S.C. § 227(a)(1) (emphasis added).   This definition is completely consistent with the TCPA's purpose: "The statute's reference to a '**random or sequential number generator**' reflects that, when the statute was enacted in 1992, telemarketers typically used autodialing equipment that either called **numbers in large sequential blocks or dialed random 10–digit strings**." *Dominguez v. Yahoo, Inc.*, 629 F. App'x 369, 372 (3d Cir. 2015) (emphasis added) ("Thus, the FCC initially interpreted the statute as specifically targeting equipment that placed a high volume of calls by randomly or sequentially generating the numbers to be dialed.").

Synchrony also noted that Drake's reliance on the FCC's earlier and more expansive definitions of an ATDS is patently incorrect in light of the D.C. Circuit's 2018 ruling in *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018) ("*ACA*"), through which the D.C.

Circuit rejected and overturned the FCC's earlier and inadequate "explanation of the requisite features" that equipment must have to qualify as an ATDS.  *Id.* at 701.  The *ACA* court's decision, which applies in all jurisdictions pursuant to the Hobbs Act[4], mandates that an analysis of a TCPA claim must employ only the statutory language, which "defines an ATDS as 'equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.'"  *Id.* at 695.

The additional facts that Plaintiff seeks to include via his FAC do not address, much less remedy, the fatal deficiency in his TCPA and MTCPA[5] claims - he has not (and cannot) allege in a non-conclusory fashion that Synchrony called his cell phone using equipment that constitutes an ATDS – *i.e.* "using a random or sequential number generator."  47 U.S.C. § 227(a)(1).

---

[4]This has been acknowledged by a multitude of courts; *see Snow v. Gen. Elec. Co.*, No. 5:18-CV-511-FL, 2019 WL 2500407 at *14 (E.D.N.C. June 14, 2019) ("Accordingly, this court's reliance on FCC guidance [concerning the definition of an ATDS] are no longer good law, because that guidance has been invalidated."); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1049 (9th Cir. 2018), ("Because the D.C. Circuit exercised its authority to set aside the FCC's interpretations of the definition of an ATDS in the 2015 order and any prior FCC rules that were reinstated by the 2015 order, we conclude that the FCC's prior orders on that issue are no longer binding on us."); *King v. Time Warner Cable Inc.*, 894 F.3d 473, 477 (2d Cir. 2018) ("ACA International...invalidated [the 2015 FCC Order] and thereby removed any deference we might owe to the views the FCC expressed in it...."); *Dominguez on Behalf of Himself*, 894 F.3d at 119 (recognizing that ACA International "set aside" the 2015 FCC Order, and that "[i]n light of the D.C. Circuit's holding, we interpret the statutory definition of an autodialer as we did prior to the issuance of" the 2015 FCC Order); *Fleming v. Associated Credit Servs., Inc.*, 342 F. Supp. 3d 563, 574 (D.N.J. 2018) ("when the D.C. Circuit vacated the 2015 FCC Declaratory Ruling it also necessarily set aside the parts of the previous 2003 and 2008 FCC Orders that ruled that a predictive dialer was impermissible under the TCPA."); *Glasser v. Hilton Grand Vacations Co., LLC*, 2020 U.S. App. LEXIS 2481 at *17, 28 Fla. L. Weekly Fed. C 770 ("But they do not come to grips with the reality that the D.C. Circuit, in a Hobbs Act proceeding of its own, wiped the slate clean.  The court reviewed the relevant parts of the orders and "set aside the Commission's treatment of those matters.'") (internal citations omitted).

[5] Drake admits that "an analysis of the [MTCPA] claim's sufficiency follows a path identical to that concerning the TCPA claim's sufficiency" (ECF no. 12, p. 3) thus conceding to Synchrony's argument that if his TCPA claim is legally insufficient, so too must be his MTCPA claim.

Drake proposes five additional (albeit formulaic and conclusory) factual allegations in his attempt to stave off dismissal of his TCPA and MTCPA claims[6]:

> 14.     The Defendant used a telephone system that has the capacity to store or produce telephone numbers to be called without human intervention, using a random or sequential number generator.
>
> 15.     This is evidenced by (1) the frequency of the calls, (2) the persistence of the calls, (3) unnatural period of silence when the call was answered, (4) the prerecorded artificial voice messages that came from the calls.
>
> 18.     All of the above makes it plausible that the Defendant's calls utilized equipment that meets the definition of an "automatic dialing system" in making calls to the Plaintiff.
>
> 19.     In particular, dead air calls and unnatural periods of silence are indicative of a "predictive dialer," which is an automatic telephone dialing system under the statute.
>
> 36.     Defendant's calls were placed using an automatic telephone dialing system.

ECF no. 16-2, pp. 3-4.

Drake's proposed paragraphs 14, 18, and 36 are plainly conclusory statements, not factual allegations, and thus insufficient to meet the Fed. R. Civ. P. 12(b) standard described *supra*.   Similarly, paragraphs 15 and 19 fail to provide any basis for one to conclude that Synchrony called him with equipment that uses a random or sequential number generator.   Drake provides no factual or legal basis for his implausible conclusion that "[D]ead air calls," frequent calls, persistent calls and "unnatural periods of silence" are in any way indicative of the use of a random or sequential number generator.   Because Drake's conclusory allegations do not advance

---

[6]Drake has also added facts concerning "Plaintiff's right to be left alone," and that "Plaintiff suffered an actual injury," as well as liberally sprinkling the word "autodialed" throughout the FAC.   None of those additions (nor the additional formulaic language in the Complaint's Counts) relate to the issues raised in Synchrony's Motion.

his TCPA and MTCPA claims across "the line from conceivable to plausible," (*Bell Atlantic Corp.*, 550 U.S. at 570) the FAC is futile and his Motion should be denied.

Moreover, Drake's allegation (with or without his requested additions) fails the test of basic common sense - if Synchrony was trying to reach an account holder at Drake's cell number, why would Synchrony use a telephone system that dials random or sequential numbers? If one knows a person's number and wishes to call them, one does not start dialing random or sequential numbers in the blind hope that one will eventually reach that person – one simply dials the number. Drake's allegations are wholly inconsistent with the well-established definition of an ATDS[7] and his proposed allegations about the "frequency" and "persistence" of the calls serve only to further illustrate the fundamental inconsistency of his argument and move his TCPA and MTCPA claims further away from, not toward, the realm of plausibility.

In sum, the FAC is plainly futile because it would be as susceptible to a Fed. R. Civ. P. 12(b)(6) motion to dismiss as is the current Complaint, if not more. Thus, Drake's Motion should be denied.

---

[7]Many courts have noted that calls directed to a specific number or person are not indicative of an ATDS. *See Trumper v. GE Capital Retail Bank*, 79 F. Supp. 3d 511, 513 (D.N.J. 2014) (Plaintiff alleged a bank placed calls to her cell phone seeking some other individual; the court observed that the "[c]omplaint takes the position that the calls were placed using an [ATDS]—a random number or sequential number generator—[but] it appears that the calls were directed at" a specific person; thus, the allegations showed no ATDS was utilized and the complaint was dismissed); *Despot v. Allied Interstate, Inc.*, No. CV 15-15, 2016 WL 4593756, at *5 (W.D. Pa. Sept. 2, 2016) ("Moreover, the calls were not random or sequential because they were made to Plaintiff."); *Daniels v. ComUnity Lending, Inc.*, 2015 WL 541299, at *7-8 (S.D. Cal. Feb. 9, 2015) (dismissing a TCPA claim with prejudice and stating that the "alleged calls to Plaintiffs do not appear to have been 'random,' 47 U.S.C. § 227(a)(1); instead, the calls are alleged to be directed specifically toward Plaintiffs").

**B. Drake's proposed amendments do not address or effect Synchrony's remaining arguments, thus making it futile as to those points as well.**

In its Motion, Synchrony set out two additional arguments, to wit: a) that because the MTCPA is solely an enabling statute, Drake's parallel TCPA and MTCPA claims represent an impermissible attempt to recover twice for the same alleged action (*see, e.g. Pasco v. Protus IP Sols., Inc.*, 826 F. Supp. 2d 825, 846 (D. Md. 2011)) and the MTCPA claim should be dismissed and b) that because the only basis for federal jurisdiction is Drake's TCPA claim, if it is dismissed, the Court may and should decline to exercise supplemental jurisdiction over any remaining state-law claims pursuant to 28 U.S.C. § 1367.

Drake's proposed amendments do not address or have any effect upon the former argument and only strengthen the latter in that he seeks to add another state-law claim; thus, if the Court were to exercise supplemental jurisdiction, the parties would be litigating three exclusively state-law-based claims in this forum instead of two.  Drake has not suggested that requiring him to litigate his state-law claims in state court would be inconvenient or unfair, since all that would do is require him to litigate his claims in the forum in which they would otherwise must have been brought.  Further, there are still no related matters pending; thus, there continue to be no issues of economy or comity that could possibly weigh in favor of the exercise of supplemental jurisdiction.

**IV.    CONCLUSION.**

For all of the foregoing reasons, Defendant Synchrony Bank respectfully submits that the Motion for Leave to File First Amended Complaint should be denied.

DATED:  March 2, 2020

Respectfully  submitted,

/s/*John L. Kazmierczak*_____
John L. Kazmierczak (Bar No. 24564)
Reed Smith LLP
20 Stanwix Street, Suite 1200
Pittsburgh, PA 15222
412-288-3131  (telephone)
412-288-3063  (facsimile)
jkazmierczak@reedsmith.com
*Attorneys for Defendant Synchrony Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2020, a copy of the foregoing Memorandum in Support of Defendant's Motion to Dismiss was filed electronically, using the ECF system, which will send notification of such filing to all parties of record. Plaintiff, who is proceeding *pro se*, has executed and filed a Consent by Self-Represented Litigant to Receive Notices of Electronic Filing (ECF no. 3).


/s/ *John L. Kazmierczak*
John L. Kazmierczak