IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| REUBEN DRAKE,<br><br>v.<br><br>SYNCHRONY BANK, *et al.* | Civil Action No. CCB-19-2134 |

### MEMORANDUM

Pro se plaintiff Reuben Drake filed an amended complaint alleging that Synchrony Bank violated the Telephone Consumer Protection Act, the Maryland Telephone Consumer Protection Act, the Maryland Consumer Protection Act, and invaded his privacy by persistently calling his cell phone using automated systems. Synchrony moved to dismiss the amended complaint in part. The motion has been fully briefed and no oral argument is necessary. *See* Local Rule 105.6. For the reasons that follow, the court will grant Synchrony's motion to dismiss.

### BACKGROUND

Drake filed his original Complaint in July of 2019, alleging that Synchrony Bank violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, Maryland Telephone Consumer Protection Act ("MTCPA"), Md. Code Ann., Com. Law § 14-3201(2), and invaded his privacy under the common law when it called his cellular phone using an automatic dialing system ("ATDS") and an automated voice. Compl., ECF 1. The case was stayed pending the Supreme Court's decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021). *See* Order, ECF 22. After *Facebook* was decided, Drake moved to reopen the case, and the court granted his motion and permitted him to file an amended complaint. *See* Order, ECF 31.

1

Drake's Amended Complaint is substantially similar to his original complaint. He alleges violations of the TCPA, MTCPA, Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301(14)(xx), and a common law invasion of privacy. Am. Compl. at 5-8, ECF 32. According to Drake, Synchrony called his cell phone number approximately 109 times between October 12, 2018, and November 23, 2018, and left numerous prerecorded messages. *Id.* ¶ 16; *see* Call Summary, ECF 35-2. He alleges Synchrony used an automatic telephone dialing system and an artificial voice to make these calls. Am. Compl. ¶ 13. Drake's sister-in-law answered one of the calls and, after a delay, a live agent asked to speak to someone named Amanda Socks. *Id.* ¶ 17. Drake states that he does not know Socks, did not consent to Synchrony's calls, and had no relevant business relationship with Synchrony. *Id.* ¶¶ 17, 20, 23. The calls were allegedly frustrating and wasted Drake's time and storage space on his phone. *Id.* ¶ 22.

Synchrony moved to dismiss Drake's Amended Complaint in part, arguing that he failed to allege facts to show that Synchrony used an automatic dialing system, and that his invasion of privacy claims fail as a matter of law. Mem. in Supp. of Partial Mot. to Dismiss at 1-2, ECF 33-1 ("Mot."). Drake opposed the motion in part, arguing that his Amended Complaint does state a claim for invasion of privacy. Opp'n to Mot. to Dismiss at 3-7, ECF 35 ("Opp'n"). Synchrony did not submit a reply.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain factual allegations that "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence

2

sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

A pro se plaintiff's pleadings are to be "liberally construed." *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "But liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 969 F.3d 605, 618 (4th Cir. 2020) (citing *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015)). In other words, a pro se plaintiff must, however inartfully, plead facts sufficient to state a claim for relief.

## ANALYSIS

### I. TCPA & MTCPA

Synchrony moves to dismiss Drake's TCPA and MTCPA claims "to the extent [he] premises [them] on the use of an autodialer." Mot. at 4. In the briefing, Drake concedes that he intended to remove his allegations relating to Synchrony's use of an automated telephone dialing system, but "inadvertently filed the wrong [draft of his] Amended Complaint" which "had the old language alleging ATDS usage by Synchrony." Opp'n at 3. Acknowledging his mistake, Drake

3

"withdraws claims of ATDS use by Synchrony in Count I and II." *Id.* Synchrony's motion to dismiss Drake's TCPA and MTCPA claims to the extent they allege use of an automated telephone dialing system will therefore be granted.

Drake asserts that he "retains other claims stated in" the TCPA and MTCPA counts. *Id.* The TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). Pursuant to the statute, a plaintiff may bring suit to recover the "actual monetary loss from . . . a violation [of the statute], or to receive $500 in damages for each such violation, whichever is greater," with treble damages available for "willful[] or knowing[] violat[ions]." *Id.* § 227(b)(3)(B), 227(b)(3); *Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641, 643 (N.D.W. Va. 2016). Maryland's Telephone Consumer Protection Act prohibits violating "[t]he Telephone Consumer Protection Act, 47 U.S.C. § 227." Md. Code Ann., Com. Law § 14-3201(2). Maryland law provides that "an individual who is affected by a violation of [the MTCPA] may bring an action against a person that violates" it. *Id.* § 14-3202(b). Thus, to state a claim for recovery under the TCPA and MTCPA, the plaintiff must allege that the defendant: (1) called his cellular phone; (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without his prior express consent (or any of the other exceptions). *See Hossfield v. Gov't Emps. Ins. Co.*, 88 F. Supp. 3d 504, 509 (D. Md. 2015).

His ATDS theory conceded, Drake must allege that Synchrony called his cellular phone and used an "artificial or prerecorded voice" to state a claim under the TCPA and MTCPA.

47 U.S.C. § 227(b)(1)(A)(iii). He has done so: the Amended Complaint states that Synchrony "call[ed] [Drake's] cell phone . . . leaving an artificial voice and prerecorded message" and left "prerecorded voice mails in Plaintiff's voice mail box." Am. Compl. ¶¶ 13, 29. Synchrony does not challenge Drake's artificial voice theory. The TCPA and MTCPA claims, Counts I and II, may therefore continue to the extent they allege that Synchrony used an artificial or prerecorded voice in its calls.

## II. Invasion of Privacy

Maryland's invasion of privacy for intrusion upon seclusion cause of action lies for "the intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person." *Harleysville Preferred Ins. Co. v. Rams Head Savage Mill, LLC*, 237 Md. App. 705, 725 (2018) (quoting *Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133, 163 (1986)). Three elements may be derived from that definition: to be actionable, the defendant's invasion must be (1) "intentional," *Neal v. United States*, 599 F. Supp. 3d 270, 299 (D. Md. 2022) ("[I]ntrusion upon seclusion . . . is an intentional tort."); *Gamble v. Fradkin & Weber, P.A.*, 846 F. Supp. 2d 377, 383 (D. Md. 2012) ("Intent is required."); (2) "into a private place [or] a private seclusion that the plaintiff has thrown about his person or affairs," *Harleysville*, 237 Md. App. at 725; *Barnhart v. Paisano Publ'ns, LLC*, 457 F. Supp. 2d 590, 593 (D. Md. 2006) ("An intrusion upon seclusion claim requires that the matter into which there was an intrusion is entitled to be private and is kept private by the plaintiff."); and (3) "highly offensive to a reasonable person," *Neal*, 599 F. Supp. 3d at 306. Synchrony challenges the first and third of these, contending primarily that its calls to Drake were not "highly offensive" because they are not alleged to have occurred at inappropriate hours and did not contain offensive content, and

secondarily that Drake does not allege that Synchrony acted with intent. Mot. at 5-7.

Whether an invasion of privacy is "highly offensive" is based on an "objective reasonableness standard"; "conduct that a particular plaintiff finds offensive, but that would not offend a reasonable person, cannot establish intrusion upon seclusion." *Neal*, 599 F. Supp. 3d at 306 (quoting *Whye v. Concentra Health Servs., Inc.*, No. ELH-12-cv-3432, 2013 WL 5375167, at *14 (D. Md. Sept. 24, 2013)). The tort has developed its own line of case law for debt collections and repeat-calls. *See Dorris v. Accts. Receivable Mgmt., Inc.*, No. GLR-11-cv-3453, 2013 WL 1209629, at *9 (D. Md. Mar. 22, 2013) (citing *Household Fin. Corp. v. Bridge*, 252 Md. 531 (1969)); *Jones v. Aberdeen Proving Ground Fed. Credit Union*, No. ELH-21-cv-1915, 2022 WL 1017094, at *21 (D. Md. Apr. 5, 2022).[1] In such a case, the court considers "(1) the degree of persistency with which the oral invasion of privacy occurs; [and] (2) the vicious quality of the oral invasion of privacy." *Summit Loans, Inc. v. Pecola*, 265 Md. 43, 45 (1972); *Dorris*, 2013 WL 1209629, at *9. More frequent calling can amount to an invasion of privacy if "the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence," *Neal*, 599 F. Supp. 3d at 306-07, while less persistent contact can be an invasion of privacy if the calls involve abusive or vile content, *Jones*, 2022 WL 1017094, at *22; *see Bridge*, 252 Md. at 541.

Drake alleges that Synchrony called him approximately 109 times in just over one month. Am. Compl. ¶ 16; *see* Call Summary. The alleged pattern of contact amounts to several calls a day nearly every day between October 13, 2018, and November 23, 2018. Call Summary. As to

---

[1] Unpublished opinions are cited for the soundness of their reasoning rather than any precedential value.

content, Drake states that Synchrony left "prerecorded artificial voice messages" and, on the one occasion a call was answered, asked to speak to Amanda Socks. Am. Compl. ¶¶ 13, 15, 17. Drake does not suggest that the content of Synchrony's calls was ever abusive or inappropriate.

The Maryland Court of Appeals first recognized the possibility for an intrusion upon seclusion claim based on persistent calling in *Household Finance Corp. v. Bridge*. 252 Md. 531. Proceeding from the premise that "a creditor has a right to take reasonable measures to pursue his debtor and persuade payment, although the steps taken may result in some invasion of the debtor's privacy," the Court surveyed the law of other states to determine when a creditor's actions exceeded the bounds of reasonableness and became highly offensive. *Bridge*, 252 Md. at 540-42. From its review, the Court concluded that, in cases where the creditor's actions were unreasonable, "there is usually present a pattern of harassment on the part of the creditor, or the communication, if not of such frequency as to constitute harassment, has been of such a nature as to possess a vicious quality. In some cases there has been both a harassment as well as vicious language used in the communication." *Id.* at 541. Applying that standard to the case before it, the Court determined that there had been no invasion of privacy when Household called Mrs. Bridge five or six times and her parents two or three times over the course of eleven months, and the communications were not particularly vile or abusive. *Id.* at 542.

Several years later, the Court of Appeals affirmed a ruling in favor of an intrusion upon seclusion claim. In *Summit Loans, Inc. v. Pecola*, the evidence showed that Summit "made well over 200 calls to [Mrs. Pecola's] home" in a six-month period, amounting to "an average of between 20 and 30 telephone calls a week." 265 Md. at 46. The calls were far from administrative: Summit's representatives insulted Mrs. Pecola and her family, threatened her husband and children, and harassed her daughter. *Id.* at 46-49. The Court of Appeals affirmed the trial court's

7

denial of a directed verdict against Mrs. Pecola, holding that "there was sufficient evidence in the case, if the jury believed the testimony of Mrs. Pecola and of [her daughter]—as it obviously did—to require that the case be submitted to the jury on the issue of an unreasonable invasion of Mrs. Pecola's privacy." *Id.* at 52. The Court specifically highlighted that the evidence supported finding "a persistent and deliberate policy by Summit Loans to harass Mrs. Pecola and further to use vicious and vile language to coerce and intimidate her." *Id.*

Since *Pecola*, no clear pattern has emerged as to the number of calls which, on their own, constitute harassment. In *Shlikas v. Sallie Mae, Inc.*, another judge on this court rejected invasion of privacy claims based on excessive but non-vicious calls from several debt collectors, including "148 phone calls [from OSI] over a thirteen-month period," No. WDQ-06-cv-2106, 2008 WL 11363282, at *4 (D. Md. June 5, 2008), *aff'd*, 487 F. App'x 68 (4th Cir. 2012) (per curiam), and in a later decision in the same case, "122 phone calls from Sallie Mae in 12 years, . . . 108 calls from AFS in seven months, . . . 64 calls from Pioneer in three months, . . . 130 calls from Great Lakes in seven years, [and] 11 calls from Diversified in one month," 2009 WL 10681983, at *2 (D. Md. May 4, 2009), *aff'd*, 487 F. App'x 68 (4th Cir. 2012) (per curiam). But in *Lipscomb v. Aargon Agency, Inc.*, the court refused to grant summary judgment against an intrusion upon seclusion claim when the plaintiff presented evidence of "approximately 20 to 25" calls over a forty-five-day period, some of which may have occurred at late hours or after the plaintiff asked to stop receiving them. No. PWG-13-cv-2751, 2014 WL 5782040, at *3 (D. Md. Nov. 5, 2014); *see also Dorris*, 2013 WL 1209629, at *9 (holding that two calls in one day were insufficient to show persistence, but that one call, if sufficiently vile, could raise a question for the jury).

In two recent cases, other judges on this court rejected intrusion upon seclusion claims

based on excessive calls. In *Jones v. Aberdeen Proving Ground Federal Credit Union*, the court reasoned that the plaintiff's allegations that he received "several calls" as frequently as "on a daily basis" failed because the calls were "a lesser volume even than in cases in which the tort was rejected," and did not have a "vicious quality." 2022 WL 1017094, at *22 (holding that the claim could nevertheless proceed because the plaintiff alleged the creditor continued to contact him even though it knew he no longer owed anything). And in *Neal v. United States*, the plaintiff's intrusion upon seclusion claim failed because she alleged only three calls on a specific day, and an unnumbered series of calls that followed which "featured neither the frequency nor the abusive content seen in the cases in which an intrusion upon seclusion claim was upheld." 599 F. Supp. 3d at 308 (citing *Pecola*, 265 Md. at 46-49).

Applying the law to the case at hand, the court finds that Drake has failed to allege highly offensive conduct. Drake alleges that he received approximately 109 phone calls in just over one month's time. His summary of calls reflects at least one call almost every day, multiple calls most days, and a nine-day period with thirty-one phone calls. *See* Call Summary. The calls apparently stopped after late November 2018.[2] *Id.* An average of nearly twenty calls per week is on the low end of the pattern approved in *Pecola*, and that case also included vile content. *See* 265 Md. at 46-49, 52 (20 to 30 calls per week could constitute a pattern of harassment). Moreover, although a plaintiff need not show both persistence and abhorrence, *see Bridge*, 252 Md. at 541, no case applying Maryland law has sustained an intrusion upon seclusion claim based on call volume alone. *See Pecola*, 265 Md. at 52 ("Use [of] vicious and vile language to coerce and intimidate."); *Lipscomb*, 2014 WL 5782040, at *3 (denying summary judgment on claim based on evidence that

---

[2] It is unclear from Drake's allegations whether the calls continued after Synchrony was informed that no one reachable at Drake's phone number knew Amanda Socks. *See* Am. Compl. ¶ 17.

defendant continued to call after plaintiff asked it to stop); *cf. Shlikas*, 2009 WL 10681983, at *2 (denying intrusion upon seclusion claim based on call volume without allegation of viciousness); *Jones*, 2022 WL 1017094, at *22. Because Drake has not alleged that Synchrony's persistence exceeded that in *Pecola* nor that Synchrony's communications were vile, Synchrony's motion to dismiss his claim for an invasion of privacy based on an intrusion upon seclusion will be granted.

Because Drake has not alleged that Synchrony's actions were "highly offensive," the court does not consider the parties' arguments regarding Synchrony's intent.

## CONCLUSION

For the reasons stated above, Synchrony's motion to dismiss in part will be granted. Drake's TCPA and MTCPA claims may continue only to the extent that they allege violations based on Synchrony's use of an artificial or prerecorded voice. His invasion of privacy claim will be dismissed.

A separate order follows.

   10/11/2023  
Date

   /s/  
Catherine C. Blake  
United States District Judge